NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4172-14T1

RONALD DESIMONE,

 Plaintiff-Appellant,

v.

ABBE LANG, f/k/a ABBE DESIMONE,

 Defendant-Respondent.

____________________________________

 Submitted October 17, 2016 – Decided July 17, 2017

 Before Judges Nugent and Currier.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Family Part,
 Burlington County, Docket No. FM-03-592-05.

 Ronald DeSimone, appellant pro se.

 Klineburger and Nussey, attorneys for
 respondent (D. Ryan Nussey and Carolyn G.
 Labin, on the brief).

PER CURIAM

 Plaintiff, Ronald DeSimone, appeals from December 15, 2014

and April 10, 2015 Family Part orders modifying his parenting time

and modifying portions of the parties' settlement agreement

concerning payment of their children's college expenses.
Plaintiff also raises an issue he did not raise before the trial

court, namely, a "cap" should be placed on his responsibility for

the children's college expenses.

 For the reasons that follow, we affirm the provision of the

order modifying parenting time, vacate the provision of the order

deviating from the parties' agreement concerning the children's

college expenses, and remand for further proceedings. We decline

to address plaintiff's argument concerning a cap on his

responsibility for the children's college expenses because he did

not preserve the issue for appeal.

 Following a fifteen-year marriage and the birth of their

three sons, the parties divorced. The March 29, 2007 Final

Judgment of Divorce (FJOD) included the terms of the parties'

agreement concerning custody, alimony, child support, and

equitable distribution (the settlement agreement). The settlement

agreement provided, among other things, that plaintiff would have

parenting time with the children every Wednesday overnight. The

settlement agreement concerning the children's college expenses

provided in pertinent part:

 It is specifically understood and agreed
 by and between Plaintiff and Defendant that
 both parties have an obligation to pay for the
 college education expenses of their children,
 taking into consideration at the time each
 child attains the appropriate age, the
 respective total financial circumstances of

 2 A-4172-14T1
the parties, as well as the obligation each
child should have to assist himself/herself
in obtaining a college degree. The parties
agree that they are and shall both be
responsible for all of the costs relating to
the children's attendance at college.
"College costs" shall be defined to include
without limitation application fees, test
preparation course fees, costs of visiting
colleges, tuition, room (on or off campus),
board, book, activity fees, reasonable costs
for the children to return home for vacations
and breaks, spending money and all other costs
associated with attendance at college.

 The parties agree that both parties shall
be actively involved in the selection of each
child's college. Both parties shall be
entitled to visit colleges with the children,
as well as work with the children to select
the best college for each child. There shall
be mutual decision making with respect to each
child's choice of college. In addition,
either party may "veto" a child's choice of
college based on the party's financial
inability to pay his or her share of the costs
thereof.

 In the absence of an agreement regarding
choice of college or the parties' respective
contributions toward college costs, either
party may apply to the Court. The Court shall
consider the total financial and other
circumstances of both parties in making its
decision. It is anticipated that the children
shall apply for all loans, aid, grants and
work-study programs for which they may be
eligible, and that these shall be applied "on
the top" with the uncovered balance of college
costs to be divided between the parties per
their agreement or, in the absence of
agreement, per Court Order.

[(Emphasis added).]

 3 A-4172-14T1
 According to the appellate record, motion practice began in

earnest after the parties' first son began college in 2011. The

motions were plentiful and protracted, occasionally acrimonious,

and usually accusatory. Although the motions and cross-motions

raised multiple issues, only two issues are relevant to this

appeal: plaintiff's Wednesday overnight visitation with the

parties' third son and the children's responsibility to apply "for

all loans, aid, grants and work-study programs for which they may

be eligible" for college.

 Plaintiff's Wednesday overnight visitation was placed in

issue when defendant filed a January 31, 2013 Notice of Order to

Show Cause seeking to "maintain the status quo concerning the

parenting time schedule for the parties' youngest son." The status

quo was, according to defendant, "alternating weekends beginning

Friday after school through Sunday evening." Defendant also

requested the court to direct "that in the event of any dispute,

the issue of the parenting schedule be addressed at the plenary

hearing."

 In support of her application, defendant averred plaintiff

had not exercised Wednesday overnight parenting time with their

youngest son for two years and had made no requests to resume it.

Then, the previous day, plaintiff showed up suddenly at defendant's

home demanding to resume overnight parenting time. When defendant

 4 A-4172-14T1
refused to accommodate plaintiff, he called the police. The police

suggested the parties resolve the matter in court.

 Defendant explained in her application the child's fragility.

She described how his physical and neurological impairments

affected him, how a disruption in his daily routine would

exacerbate his emotional condition, and that plaintiff lived an

hour away. Defendant surmised plaintiff's motivation to resume

his "forgotten parenting time" was to "get back" at her because

of his intense discontent with a recent mediation session.

 The court eventually conducted interviews with the parties'

children in August 2013.1 For reasons not apparent from the

appellate record, it does not appear the court addressed the issue

again until August 19, 2014. At that time, the court granted

defendant's application. In an August 27, 2014 order, the court

provided that plaintiff would have overnight parenting time

"[d]uring the summer vacation until school commences, as well as

on any school year weekday during which [the child] does not have

school on Thursday[.]" The court further ordered that "[o]nce the

school year commences, as well as on any school year weekday during

1
 The court apparently placed its findings and observations on the
record on August 14, 2013. The appellate record does not include
a transcript of these findings. Defendant filed a motion to compel
plaintiff to provide a copy of the transcript. The motion was
denied.

 5 A-4172-14T1
which [the child] does have school on Thursday, [p]laintiff's

Wednesday parenting time shall not be overnight and shall commence

at 5:00 p.m. and conclude at 8:30 p.m."

 Meanwhile, in January 2014, plaintiff filed a motion seeking

recalculation of child support and reallocation of certain

expenses, and a "recalculation" of the parties' responsibility for

their sons' college expenses. In his supporting papers, plaintiff

averred the parties' second son qualified for loans totaling $5500

per year, which he declined to take. Plaintiff asserted that

under the settlement agreement, those loans "must be taken off the

top of his tuition" before the remaining costs were allocated to

the parties.

 Defendant filed a cross-motion seeking various relief not at

issue in this appeal. In a March 2014 letter, the trial court

sought additional information from the parties. After receiving

the additional information, the court decided, among other issues,

those now raised in this appeal. Based on its interview with the

children, specifically the youngest child, the court determined

there was "a prima facie showing of a substantial change in

circumstances, making it necessary for it to review some of the

parenting time arrangements[.]" The court went on to determine

it "really only . . . needs to make a slight modification on one

of those arrangements." Based on its interview with the youngest

 6 A-4172-14T1
child, the court recalled the youngest child had two concerns:

that he be permitted to take his skateboard when he visited his

father, and "that he was concerned about being returned to school

late after times with dad. And he mentioned particular concern

on the Thursday after the Wednesday parenting time." For that

reason, the court determined it needed only "to make a slight

modification on one of [the parenting] arrangements."

Accordingly, the court determined "that the Wednesday parenting

time shall be on a non-overnight basis," commencing the following

Wednesday. The court also ordered the parties to "commence family

counseling immediately," and to refer any future parenting time

issues to the Burlington County Custody Mediation Program.

 Next, the court recounted the considerable information the

parties submitted concerning their respective financial

conditions, and made findings of fact concerning their incomes and

other financial issues. The court determined "the allocation of

responsibility for the college education cost will be apportioned

at [sixty-nine] percent to the plaintiff and [thirty-one] percent

to the defendant." The court also determined "[t]his apportionment

shall start with the first dollar for the college education

expenses paid on behalf of [the oldest son]."

 Addressing the children's obligations to obtain available

financial aid, the court decided that if:

 7 A-4172-14T1
 none of the financial aid [was] used, then
 what the Court believes is that the kids ought
 not to be penalized because that didn't come
 out in the wash somehow between their parents.
 So if there was no form of aid that was
 utilized by either of the two older children,
 at this point in time, the Court would order
 and direct that it would vacate that portion
 of the . . . agreement which requires that
 they . . . be obligated to obtain any type of
 financial aid, except any grants or work-study
 programs which they would not have to repay.

 The court explained it was trying to "put the three [children]

on an equal playing field."

 The court entered two memorializing orders, both dated

December 15, 2014. In the "parenting time order," the court

ordered that during summer vacation, and "on any school year

weekday during which [the youngest child] does not have school on

Thursday, Plaintiff shall have overnight parenting time . . . as

otherwise set forth in the [settlement agreement] of the parties."

Once the school year commenced, however, when the youngest child

"does have school on Thursday, Plaintiff's Wednesday parenting

time shall not be overnight and shall commence at 5:00 p.m. and

conclude at 8:30 p.m." In the separate order concerning the

financial issues, the court ordered the sixty-nine percent –

thirty-one percent allocation between plaintiff and defendant for

the expenses of their children's college educations. Paragraphs

six and seven of the order provided:

 8 A-4172-14T1
 6. The [c]ourt reiterates as of October 22,
 2014, there is a continuing obligation of all
 of the children to obtain and utilize all
 available loans, aid, grants and work-study
 programs for which they may be eligible.
 These funds shall be applied "on the top" and
 then any uncovered balance of college costs
 shall be divided between the parties in the
 percentages set forth . . . above.

 7. If any time frame has passed within which
 either of the college age children could have
 obtained loans, aid, grants and work-study
 programs for which they may have been eligible
 but did not obtain, then Paragraph 6 shall not
 apply in that situation.

 Defendant filed an order to show cause on January 29, 2015,

seeking enforcement of the December 15, 2014 order and compelling

plaintiff to pay his allocated share of the children's college

expenses. In his opposition, plaintiff alleged he had paid his

allocated share, but the second child did not take out available

loans in the amount of $6500, so plaintiff subtracted the amount

of the loan "off the top" and paid his allocated share of the

remaining balance. The court heard argument on the motion on

April 10, 2015.

 The court issued a written opinion the same day, stating:

 Based upon a review of the submissions
 . . . the [c]ourt finds and determines that
 neither [the oldest child] nor [the middle
 child] shall be obligated to obtain loans in
 connection with their college education
 expenses. At the time of the hearing on this
 matter, the [c]ourt expressed an intention to
 place the children "on an equal playing field"

 9 A-4172-14T1
 with respect to college costs being subsidized
 by loans. By way of further clarification,
 in the event either [the oldest child] or [the
 middle child] obtain financial aid by way of
 scholarships, grants, or other assistance that
 does not require repayment, that form of
 financial aid shall be deducted from the gross
 college education expenses due and owing to
 the educational institution prior to the
 utilization of the allocation of
 responsibility as previously provided for in
 the Order entered on December 15, 2015. This
 determination applies to [the oldest child]
 and [the middle child] and their respective
 college costs and loans. By way of further
 clarification, in the event either [the oldest
 child] or [the middle child] obtain financial
 aid by way of scholarships, grants, or other
 assistance that does not require repayment,
 that form of financial aid shall be deducted
 from the gross college education expenses due
 and owing to the educational institution prior
 to the utilization of the allocation of
 responsibility as previously provided for in
 the Order entered on December 15, 2014.

Plaintiff filed this appeal. He makes three arguments:

POINT I THE COURT ERRED IN ITS DETERMINATION THAT
 A SUBSTANTIAL CHANGE OF CIRCUMSTANCE
 OCCURRED TO ALLOW THE COURT TO DEVIATE
 FROM THE AGREED VISITATION SCHEDULE
 WITHIN THE FINAL JUDGMENT OF DIVORCE.

POINT II THE COURT ERRED IN ITS DETERMINATION TO
 MODIFY THE COLLEGE PROVISIONS SET FORTH
 IN THE FINAL JUDGMENT OF DIVORCE AS TO
 CAUSE THE CHILDREN NOT TO HAVE TO
 CONTRIBUTE TO THEIR COLLEGE EXPENSES BY
 TAKING LOANS WHICH WERE OTHERWISE
 AVAILABLE TO THEM.

POINT III THE COURT ERRED BY NOT PLACING A CAP OF
 RESPONSIBILITY UPON THE PARENTS AS TO
 THEIR CONTRIBUTIONS TOWARDS COLLEGE

 10 A-4172-14T1
 EXPENSES TO ENSURE THE AFFORDABILITY TO
 THE PARENTS TO CONTRIBUTE TO EACH CHILD'S
 SECONDARY EDUCATION EQUALLY.

 Plaintiff's arguments in Points I and III are without

sufficient merit to warrant discussion in a written opinion. R.

2:11-3(e)(1)(E). We add only the following comments. In the

"Statement of Facts" section of his brief under "Visitation,"

plaintiff makes assertions without any reference to the record.

An appellant's brief is required to contain "[a] concise statement

of the facts material to the issues on appeal supported by

references to the appendix and transcript." R. 2:6-2(a)(5)

(emphasis added). Moreover, plaintiff did not include in his

appendix the transcript of the trial court's findings following

the court's interview with the children. Appellants are required

to provide "such . . . parts of the record . . . as are essential

to the proper consideration of the issues[.]" R. 2:6-1(a)(1)(I).

Our consideration of those parts of the record that have been

included in this appeal lead us to conclude the trial court did

not abuse its discretion in making the slight modification to the

parties' parenting time agreement.

 Plaintiff did not raise before the trial court the issue of

a "cap" on his obligation to pay for the children's college

expenses. "It is a well-settled principle that our appellate

courts will decline to consider questions or issues not properly

 11 A-4172-14T1
presented to the trial court when an opportunity for such a

presentation is available 'unless the questions so raised on appeal

go to the jurisdiction of the trial court or concern matters of

great public interest.'" Nieder v. Royal Indem. Ins. Co., 62 N.J.

229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J.

Super. 542, 548 (App. Div. 1959), certif. denied, 31 N.J. 554

(1960)).

 Unlike the first and third points, we find merit in

plaintiff's second point. "Settlement of disputes, including

matrimonial disputes, is encouraged and highly valued in our

system." Quinn v. Quinn, 225 N.J. 34, 44 (2016) (citation

omitted). If parties have settled a matrimonial dispute, and the

terms of the settlement agreement are "clear, unambiguous, and

mutually understood," then a court should enforce the settlement

terms unless there is a compelling reason to depart from them. Id.

at 55. "When a court alters an agreement in the absence of a

compelling reason, the court eviscerates the certitude the parties

thought they had secured, and in the long run undermines this

Court's preference for settlement of all, including marital,

disputes." Ibid.

 Here, it appears that the trial court's primary purpose in

departing from the clear, unambiguous terms of parties' settlement

agreement was to put the children "on equal footing." The trial

 12 A-4172-14T1
court did not appear to undertake any in-depth legal analysis as

to whether or not such a reason was "compelling." Children may

differ in their abilities, and the differences may result in one

child getting financial assistance for college. For example, one

child may qualify for an academic or athletic scholarship, and

another may not. Such differences in children's abilities is not

a reason for departing from a parental agreement and understanding

that children should, to the extent possible, contribute to their

college educations by taking out loans for which they may qualify.

 Having said that, we are unable to determine from the record

whether other considerations played a role in the trial court's

decision. For example, there is some suggestion that the decision

was based in part on the court's interview with the children. As

previously noted, we do not have the transcript of the court's

findings following the interviews. There is also some suggestion

in the record that the court's decision may have been based on

financial and other considerations. For these reasons, and out

of an abundance of caution, we vacate the provisions in the orders

essentially relieving the children from their obligations to

obtain appropriate aid. On remand, the court shall provide the

parties an opportunity to make an appropriate record on the issue.

The court shall support whatever decision it makes with appropriate

findings of facts and conclusions of law.

 13 A-4172-14T1
 The orders from which plaintiff appealed are affirmed in part

and vacated in part. This matter is remanded for further

proceedings consistent with this opinion. We do not retain

jurisdiction.

 14 A-4172-14T1